The Security National Bank of Trenton v. Commissioner.
Security Nat'l Bank v. Commissioner
Docket No. 84267.
United States Tax Court
T.C. Memo 1961-147; 1961 Tax Ct. Memo LEXIS 203; 20 T.C.M. (CCH) 737; T.C.M. (RIA) 61147; May 23, 1961
*203 Morris R. Friedman, Esq., 7 E. 44th St., New York, N. Y., for the petitioner. Chapman H. Belew, Jr., Esq., for the respondent. RAUM
Memorandum Opinion RAUM, Judge: Respondent determined deficiencies in income tax of petitioner in the amount of $1,134.64 for each of the years 1956 and 1957. Petitioner claims overpayments in the amounts of $980.28 for the year 1956 and $839.28 for the year 1957. The sole issue is whether petitioner is entitled to deductions for depreciation with respect to certain structures situated on land acquired by it for use as a parking lot even though, at the time of acquisition, it intended to abandon the structures. The pertinent facts have been stipulated, and, as stipulated, are incorporated herein by reference. They may be summarized as follows: Petitioner, a National Bank, was during the years 1956 and 1957 engaged in the banking business at Brunswick and Olden Avenues, Trenton, New Jersey. Its Federal income tax returns for those years were filed with the district director of internal revenue at Camden, New Jersey. It kept its books and filed its income tax returns on a "modified cash basis of accounting." In 1953 petitioner's *204 directors decided upon a program of expansion and general improvement. As a part of that program it purchased on August 2, 1954, at a cost of $80,231.52, property located at 883-885 Brunswick Avenue, which was contiguous to its own property. The property purchased had 50 feet of frontage on Brunswick Avenue and a depth of approximately 172 feet. Two structures were located on this property, a three-story frame house which had been used by the vendor, Dr. Urbaniak, as a combination residence and office, and a wooden garage. As of October 1, 1953, the assessed valuation of the property for purposes of the City of Trenton real estate taxes was as follows: Land
$1,775.00
17.9%
Buildings
8,125.00
82.1%
$9,900.00
100 %
At the time it acquired the 883-885 Brunswick Avenue property it was petitioner's intention to abandon the house and garage, and on or about October 4, 1954, it "sold" those structures for the nominal amount of $140 and permitted their removal from the premises. On November 19, 1954, petitioner completed construction, at a cost of $4,362.35, of new parking facilities on the vacant land on the 883-885 Brunswick Avenue property. These facilities *205 were depreciable over a period of 15 years at the rate of 6 2/3 percent per year. As part of its expansion program, petitioner, on or about June 8, 1955, purchased the premises at 1225-1227 North Olden Avenue, which property was located in the rear of petitioner's building, and on December 17, 1956, completed construction of a new addition to the rear of its building, a part of which was located on the North Olden Avenue property. In its 1957 return petitioner claimed and was allowed depreciation in the amount of $11,336.06, which was based upon the $283,401.55 cost of the new addition depreciated over a life of 50 years at the rate of four percent under the double declining balance method. In its income tax returns for the years 1956 and 1957 petitioner included an item of $65,460 designated "Building demolished for parking area" in its schedule of depreciable assets and claimed depreciation thereon of $2,182 based on a useful life of 30 years using a straight line method. The assets underlying the $65,460 item were the house and garage located on the 883-885 Brunswick Avenue property which had been removed. The $65,460 was arrived at by allocating 82 percent of the $80,000 purchase *206 price ($80,231.52, including legal fees) to the buildings and adjusting the resulting figure by the $140 received by petitioner at the time of their removal. Respondent disallowed the deductions for depreciation of $2,182 claimed in the 1956 and 1957 returns. Petitioner contends that a substantial part of the $80,231.52 it paid for the Brunswick Avenue property was paid for the two structures on that property at the time of its purchase; that since the property was purchased solely for the purpose of constructing new parking facilities thereon, the transaction was not "closed" when the old structures were abandoned; that there was a substitution of "structures" when the new parking facilities were "erected"; and that it is therefore entitled to have the basis of the old structures, $65,870.08 (82.1 percent of $80,231.52), "tacked on" to the basis of the new facilities and to recover the cost of the old structures through depreciation over the 15-year life of the new facilities at the rate of 6 2/3 percent per year. In the alternative it contends that the cost of the old structures should be added to the cost of the new addition completed on December 17, 1956, and depreciation allowed *207 at the rate of four percent per year beginning in 1957. We do not agree with petitioner. It purchased the Brunswick Avenue property for the purpose of acquiring land for use as a parking lot. Its intention at the time of the purchase was to remove the house and garage located on the property inasmuch as they had no value to it for the purpose for which the property was being acquired. It never used the buildings for the production of income (cf. (Ct. Cls.)) and they were removed from the property approximately two months after it was purchased. In order for petitioner to be entitled to the claimed deduction for depreciation it had the burden of proving, first, that some portion of the purchase price of the Brunswick Avenue property was allocable to the removed buildings, and secondly, that it was entitled to add that portion to the cost of some substituted structure for depreciation purposes. It has not sustained the first of these burdens. The question whether a portion of the purchase price of property, which is purchased with the intention of demolishing or removing a structure thereon and using the land *208 for a business purpose, may be allocated to the structure has been considered in many cases. These cases involved claims for demolition losses, claims for depreciation, and the basis for gain or loss when the property was subsequently sold. Cf. ; , affirmed on another ground, (C.A. 4); ; (C.A. 1); , affirmed (C.A. 9). In these cases the courts have held that where property is purchased with the intention of demolishing or removing a structure thereon, no portion of the purchase price is allocable to the structure, and in reaching this conclusion in the Lynchburg case, this Court () said: Where, as here, there is a purchase of land with the intent to demolish a building situated thereon and erect a new one, no part of the price paid is allocable to the building, since it is deemed that the building has no value to *209 the purchaser and it is the land which is purchased and which alone has value. The entire purchase price, therefore, represents the cost of the land and becomes the purchaser's basis. . The fact that a certain value was placed on the building at the time of purchase, that the buildings were rented and rent collected, and depreciation claimed is deemed immaterial. The original intention is the determining factor. . Therefore, the old building had a basis of zero to the petitioner. * * * We reach a similar result here. The entire amount of the purchase price (adjusted only by the $140 received on removal of the buildings) represented the cost of the land to petitioner, and no part thereof may be subject to depreciation. [1]
*210 Cases relied upon by petitioner are distinguishable on their facts. In , the decision to demolish buildings and replace them with new buildings was made several years after the purchase of the property, and it was held that the taxpayer could include in its basis for computing depreciation upon the new buildings its adjusted basis in the demolished buildings. In (C.A. 2), affirming , certiorari denied , where a lessor entered into a lease in which he gave the lessee permission to demolish old buildings on the leased property and erect a new building, and the lessee agreed to pay rent on the new building for a period of 21 years, it was held that the removal of the old buildings was part of the cost of acquiring the lease and that there was a substitution of assets rather than a loss sustained in the destruction of the old buildings. In , where a bank purchased adjacent rental property with the intent of operating the property for an indefinite time and ultimately *211 demolishing the buildings thereon to make way for a parking lot, it was held that the taxpayer was entitled to depreciation on the buildings during the period they were held for the production of income. Decision will be entered for the respondent. Footnotes
1. Petitioner presented evidence that the land was worth $10,000. We do not find that evidence convincing and refuse to make any finding based upon it. Moreover, the real issue here is, not what the land was worth, but rather what this petitioner in fact paid for it, and we are satisfied by the stipulated facts that this petitioner paid the full amount of the purchase price (as adjusted only by the $140 received on removal of the buildings) for the land.↩